670 So.2d 1056 (1996)
Noel D. CLARK, Appellant,
v.
STATE of Florida, Appellee.
Case No. 95-00148.
District Court of Appeal of Florida, Second District.
March 15, 1996.
John Charles Coleman, Fort Myers, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia J. Hakes, Assistant Attorney General, Tampa, for Appellee.
PATTERSON, Acting Chief Judge.
Noel Clark appeals from his conviction for theft of trade secrets in violation of section 812.081, Florida Statutes (1993). We reverse Clark's conviction because the materials at issue are not "trade secrets."
Norman Frick owned and operated "Resale Specialists," a company engaged in the *1057 sale of mobile homes on leased lots. In December 1993, Frick hired Clark to manage his rental division. Soon after, upon Clark's request, Frick also allowed him to make sales. Clark was a licensed real estate salesperson, and he obtained authorization to sell mobile homes on leased lots.
Frick's business operated much like a standard real estate sales office based on exclusive listings, or right of sale agreements. From these listing agreements were compiled information sheets for the use of Frick's employees, and others, as an aid in the sale of mobile homes. The information sheets contained the name and address of the owner and general information on the property such as the number and size of rooms and amenities. Copies of the information sheets were compiled in several books kept in the office. Frick gave one of these books to Clark at the time of his employment.
Clark proved to be an effective salesperson and obtained contracts for sale on several units within a number of weeks. Prior to the closings, Clark alleges that he obtained information from the State of Florida that Frick's license to sell mobile homes, issued by the Department of Motor Vehicles, had not been timely renewed. Clark asserts that he confronted Frick with the information and questioned the legal right to close the transactions and receive commissions. No immediate resolution was reached.
On January 15, 1994, Clark went to the business office, collected certain of his personal property, and waited for Frick to arrive. A confrontation resulted wherein Clark told Frick he was retaining the information sheets "as evidence" which Frick could obtain through "court proceedings." He then demanded that Frick close the pending sales through a licensed dealer and deposit the commission proceeds in the court registry. Frick refused and Clark left.
Frick contacted the Lee County Sheriff's Department and reported that Clark had burglarized the office and stolen various items of property, including the information sheets. Clark was interviewed, waived his constitutional right to remain silent, and basically recounted the above facts. Clark and Frick then filed civil lawsuits against one another.
For reasons not apparent to this court, this civil dispute of modest proportions escalated into a criminal prosecution wherein Clark was charged with theft of trade secrets (a third-degree felony), petit theft (a misdemeanor), and burglary of a structure (a third-degree felony). A jury trial resulted in his conviction for theft of trade secrets and his acquittal on the remaining two offenses.
Clark has raised numerous issues on appeal. The only issue we need to address to reverse Clark's conviction is whether the "information sheets" are protected materials under section 812.081, Florida Statutes (1993), which provides in pertinent part:
812.081 Trade secrets; theft, embezzlement; unlawful copying; definitions; penalty.
. . . .
(c) "Trade secret" means the whole or any portion or phase of any formula, pattern, device, combination of devices, or compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage, or an opportunity to obtain an advantage, over those who do not know or use it.
Confining our determination to the facts of this case, the "information sheets" neither provide Frick's business an advantage or an opportunity to obtain an advantage over competitors. They are of little or no significance because the underlying exclusive sales agreement is the document from which Frick derives his advantage. In fact, these "information sheets," much like the same written materials in the real estate trade, derive their value from their use in effecting sales to which Frick is the benefactor. The sheets were available for inspection and use by outside salespersons showing the homes. One such person testified that she would hold "open houses" of the listed properties and pass out copies of the sheets to prospective buyers. Clearly, these materials were not secret or confidential and do not constitute "trade secrets." We, therefore, reverse *1058 Clark's conviction for theft of trade secrets and direct that he be discharged.
Reversed.
BLUE, J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring specially.
I agree the state failed to prove that these specific information sheets were "trade secrets" taken with the "intent to deprive" as required in section 812.081(2), Florida Statutes (1993). I write only to emphasize that similar documents could be in the nature of a "list of customers," as discussed in section 812.081(1)(c), and could contain information providing a business advantage. An entire book of such information sheets might be a trade secret, even though individual sheets were shared with potential buyers. Thus, I do not regard this case as holding, as a matter of law, that a realtor's book of information sheets is never a trade secret.